**OUTTEN & GOLDEN LLP**
Rachel Bien
Juno Turner
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000
Facsimile: (212) 977-4005

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILEY WRIGHT, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>C.E.C. ENTERTAINMENT, INC. d/b/a CHUCK E. CHEESE'S,<br><br>      Defendant. | **Case No. 14-cv-06110** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE <u>PURSUANT TO SECTION 216(b) OF THE FLSA</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL HISTORY .................................................................................... 2

THE PARTIES ...................................................................................................... 2

    A.    Defendant .................................................................................... 2

    B.    Plaintiff ....................................................................................... 2

STATEMENT OF FACTS ..................................................................................... 3

I.    CEC Controls Store Operations Nationwide ...................................... 3

II.    CEC Orients and Trains All AMs and SAMs the Same Way, Regardless of Location ...... 5

III.    CEC AMs and SAMs All Perform the Same Primary Job Duties ..................... 6

IV.    CEC Classified Plaintiff, AMs, and SAMs as Exempt ........................... 7

ARGUMENT ......................................................................................................... 7

I.    Court Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals ............. 7

II.    Plaintiff Exceeds His Low Burden for Conditional Certification ...................... 8

    A.    Plaintiff's Burden Is Minimal ................................................... 8

    B.    Plaintiff, AMs, and SAMs Are Similarly Situated with Respect to Their Classification as Exempt Employees ................................................ 11

    C.    Plaintiff, AMs, and SAMs Are Similarly Situated with Respect to Their Job Duties ............................................................... 12

    D.    The Court Should Not Weigh the Merits or Consider Conflicting Evidence of Collective Members' Duties at the Conditional Certification Stage ................... 13

III.    The Court Should Approve Plaintiff's Proposed Notice .......................... 15

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Ack v. Manhattan Beer Distribs., Inc.*,
   No. 11 Civ. 5582, 2012 WL 1710985 (E.D.N.Y. May 15, 2012)............................................16

*Amador v. Morgan Stanley & Co.*,
   No. 11 Civ. 4326, 2013 WL 494020 (S.D.N.Y. Feb. 7, 2013) .........................................11, 15

*Aros v. United Rentals, Inc.*,
   269 F.R.D. 176 (D. Conn. 2010).....................................................................................13, 14

*Batres v. Valente Landscaping, Inc.*,
   No. 14 Civ. 1434, 2014 WL 2111080 (E.D.N.Y. May 21, 2014)......................................8, 10

*Braunstein v. E. Photo. Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979)..............................................7

*Chen v. Oceanica Chinese Rest., Inc.*,
   No. 13 Civ. 4623, 2014 WL 1338315 (E.D.N.Y. April 2, 2014) ............................................10

*Chhab v. Darden Rests., Inc.*,
   No. 11 Civ. 8345, 2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013) ..........................................17

*Cohan v. Columbia Sussex Mgmt., LLC*,
   No. 12 Civ. 3203, 2013 WL 8367807 (E.D.N.Y. Sept. 19, 2013) ..........................................15

*Cohen v. Gerson Lehrman Grp., Inc.*,
   686 F. Supp. 2d 317 (S.D.N.Y. 2010)..............................................................................13, 14

*Cuzco v. Orion Builders, Inc.*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007)....................................................................................8

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) .....................................................................................12, 14

*Damassia v. Duane Reade, Inc.*,
   No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) .............................................14

*Diaz v. S & H Bondi's Dep't Store*,
   No. 10 Civ. 7676, 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012)..............................................15

*Dilonez v. Fox Linen Serv. Inc.*,
   No. 13 Civ. 845, 2014 WL 3893094 (E.D.N.Y. July 25, 2014) ..............................................8

*Gambino v. Harvard Prot. Servs. LLC*,
   No. 10 Civ. 983, 2011 WL 102691 (S.D.N.Y. Jan. 11, 2011).................................................16

ii

*Guzelgurgenli v. Prime Time Specials Inc.*,
883 F. Supp. 2d 340 (E.D.N.Y. 2012) ...................................................................................9

*Hamadou v. Hess Corp.*,
No. 12 Civ. 0250, 2013 WL 164009 (S.D.N.Y. Jan. 16, 2013)............................................16

*Hernandez v. Merrill Lynch & Co., Inc.*,
No. 11 Civ. 8472, 2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012)............................................11

*Hoffmann v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997)........................................................................................8

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)....................................................................................................8, 16

*Holbrook v. Smith & Hawken, Ltd.*,
246 F.R.D. 103 (D. Conn. 2007)..........................................................................................15

*Indergit v. Rite Aid Corp.*,
Nos. 08 Civ. 9361, 08 Civ. 11364,
2010 WL 2465488 (S.D.N.Y. June 16, 2010) ....................................................10, 11, 13, 15

*Jackson v. Bloomberg, L.P.*,
298 F.R.D. 152 (S.D.N.Y. 2014) ..........................................................................................14

*Limarvin v. Edo Rest. Corp.*,
No. 11 Civ. 7356, 2013 WL 371571 (S.D.N.Y. Jan. 21, 2013)............................................17

*McEarchen v. Urban Outfitters, Inc.*,
No. 13 Civ. 3569, 2014 WL 4701164 (E.D.N.Y. Sept. 23, 2014)..........................................13

*Morris v. Lettire Constr., Corp.*,
896 F. Supp. 2d 265 (S.D.N.Y. 2012).............................................................................16, 17

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010)....................................................................................... *passim*

*Pippins v. KPMG LLP*,
No. 11 Civ. 0377, 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012)............................................8, 16

*Poplawski v. Metroplex on the Atl., LLC*,
No. 11 Civ. 3765, 2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012)............................................11

*Puglisi v. TD Bank, N.A.*,
998 F. Supp. 2d 95 (E.D.N.Y. 2014) ............................................................................ *passim*

*Ravenell v. Avis Budget Car Rental, LLC*,
No. 08 Civ. 2113, 2010 WL 2921508 (E.D.N.Y. July 19, 2010) .....................................11, 13

*Rosario v. Valentine Ave. Disc. Store, Co., Inc.*,
    828 F. Supp. 2d 508 (E.D.N.Y. 2011) ...........................................................9, 10

*Schear v. Food Scope Am., Inc.*,
    297 F.R.D. 114 (S.D.N.Y. 2014) ...........................................................................16

*Sharma v. Burberry Ltd.*,
    No. 12 Civ. 6356, 2014 WL 4385426 (E.D.N.Y. Sept. 4, 2014)............................17

*Stevens v. HMSHost Corp.*,
    No. 10 Civ. 3571, 2012 WL 4801784 (E.D.N.Y. Oct. 10, 2012) ......................9, 10

*Summa v. Hofstra Univ.*,
    715 F. Supp. 2d 378 (E.D.N.Y. 2010) ...............................................................8, 10

*Tutein v. Esteemed Patrol Inc.*,
    No. 12 Civ. 1847, 2013 WL 8115441 (E.D.N.Y. June 10, 2013)........................8, 9

*Winfield v. Citibank, N.A.*,
    843 F. Supp. 2d 397 (S.D.N.Y. 2012)..................................................................15

*Wraga v. Marble Lite, Inc.*,
    No. 05 Civ. 5038, 2006 WL 2443554 (E.D.N.Y. Aug. 22, 2006) .......................1, 9

**Statutes**

29 U.S.C. § 216(b) ........................................................................................7, 8, 10

**Other Authorities**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 295
    (2008)...............................................................................................................17

## PRELIMINARY STATEMENT

Plaintiff Wiley Wright, who worked for Defendant CEC Entertainment, Inc. d/b/a Chuck E. Cheese's ("CEC"), as an Assistant Manager and Senior Assistant Manager, respectfully requests authorization to send notice of this lawsuit to other similarly situated workers so that they can decide whether to join the case and stop their Fair Labor Standards Act ("FLSA") statutes of limitations from running.  In order to authorize notice at this early stage, the Court only needs to make an initial determination that Wright and other Assistant Managers ("AMs") and Senior Assistant Managers ("SAMs") "may be" similarly situated.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).

Plaintiff's declaration, information contained in CEC's corporate filings, and CEC's uniform job postings are sufficient to meet Plaintiff's minimal burden for conditional certification.  They show that CEC centrally controlled all facets of its stores, uniformly classified Plaintiff and all AMs and SAMs as exempt from the FLSA's overtime requirements, and required AMs and SAMs to perform the same or very similar job duties that did not vary from store to store.  Courts in this circuit routinely authorize notice based on similar showings. *See, e.g.*, *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 100 (E.D.N.Y. 2014) (granting conditional certification of nationwide collective based on declarations and job postings); *Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006) ("Courts routinely grant [conditional certification] motions based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.").

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on October 17, 2014, bringing nationwide collective and New York class claims against CEC for willfully misclassifying its AMs and SAMs as exempt from the protections of the FLSA and the New York Labor Law ("NYLL"). ECF No. 1.[1]

On October 30, 2014, Plaintiff sought leave to file this motion, which the Court granted. ECF No. 4; Minute Order dated Nov. 20, 2014.

Defendant's deadline to answer or otherwise respond to Plaintiff's complaint is December 29, 2014. ECF No. 7. The parties have not engaged in any discovery to date. Decl. of Juno Turner in Supp. of Pl.'s Mot. for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("Turner Decl.") ¶ 4.[2]

## THE PARTIES

### A.   Defendant

CEC operates family dining and entertainment stores under the name "Chuck E. Cheese's." Ex. A (CEC 2013 Form 10-K) at 4. For the 2013 fiscal year, CEC's gross revenue was approximately $821 million. *Id.* at 49.

### B.   Plaintiff

Plaintiff worked as an AM and/or a SAM at four Chuck E. Cheese's stores from approximately January 2008 to approximately May 2014. Ex. B (Decl. of Wiley Wright ("Wright Decl.")) ¶ 1. From approximately February 2008 to approximately April 2010, Wright worked as an AM at CEC's Gun Hill Road, Bronx location. *Id.* ¶ 2. From approximately April 2010 to approximately October 2010, Wright was an AM at CEC's Brooklyn location. *Id.* ¶ 3.

---

[1]     Plaintiff initially named Apollo Global Management, LLC ("Apollo") as a defendant. On December 1, 2014, the parties stipulated to the dismissal of Apollo from this action without prejudice. ECF No. 19.

[2]     Unless otherwise noted, all exhibits are to the Turner Declaration.

2

From approximately October 2010 to approximately October 2011, Wright was an AM at CEC's Long Island City, Queens location. *Id.* ¶ 4. From approximately October 2011 to approximately November 2013, Wright was a SAM at CEC's Brooklyn location. *Id.* ¶ 5. From approximately November 2013 to approximately May 2014, Wright was a SAM at CEC's Harlem, Manhattan location. *Id.* ¶ 6.

Wright's job duties did not change when he became a SAM. *Id.* ¶ 8. As both an AM and a SAM, Wright was supervised by the store's General Manager. *Id.* ¶ 21. The General Manager was responsible for making the schedule, supervising the AMs, SAMs, and crew members, handling problems that arose between employees or with customers, placing orders, and managing the store's labor budget. *Id.*

## STATEMENT OF FACTS

### I.     CEC Controls Store Operations Nationwide.

CEC's business model and its corporate brand depend on top-down control over its store operations to ensure that each location in the chain operates uniformly, regardless of location, nationwide. CEC operates "family dining and entertainment centers." Ex. A (CEC 2013 Form 10-K) at 4. It opened its first store in 1977, went public in 1989, and now operates over 550 stores worldwide. *Id.*[3] The vast majority of the stores are Company-operated, with only a small fraction operated by franchisees. *Id.*[4]

Each Chuck E. Cheese's store offers a uniform and consistent customer experience across various metrics. "Chuck E. Cheese's are typically located in shopping centers or in free-standing buildings near shopping centers." *Id.* at 6. The stores are divided into three main areas: "(a) a

---

[3]     As of the end of fiscal year 2013, 542 of these stores were located in the United States. Ex. A (CEC 2013 Form 10-K) at 17.
[4]     As of the end of fiscal year 2013, over 500 of CEC's stores in the United States were Company-operated. Ex. A (CEC 2013 Form 10-K) at 17.

kitchen and other store-related areas," including cashier and prize areas, a salad bar, a manager's office, a technician's office, and restrooms; "(b) a showroom area; and (c) a gameroom area." *Id.* Each store has seating for 400-450 guests, on average. *Id.* Each gameroom is further divided into three sections: Toddler Zone®, Kiddie Area, and Skill Games and Arcades. *See* Ex. C ("Visiting Chuck E. Cheese's"). Each store's gameroom includes a series of "tubes and tunnels suspended from, or reaching to, the ceiling known as Sky Tubes®, as well as other free attractions for young children." Ex. A (CEC 2013 Form 10-K) at 6. All company-owned stores include seating in the gameroom areas "so that parents can more closely observe and interact with their children as they play the games and ride the rides." *Id.*

CEC periodically "reevaluate[s] the site characteristics" of its existing stores and "will consider relocating a store if certain site characteristics considered essential for the success of a store deteriorate." *Id.* at 5.

All stores employ a consistent entertainment formula. For instance, CEC requires character performances in all of its stores every hour on the half-hour. *Id.* at 6; *see also* Ex. C ("Visiting Chuck E. Cheese's"). Similarly, games and rides are operated by a single token that can be used in every Chuck E. Cheese's location. Ex. A (CEC 2013 Form 10-K) at 6. The Company centrally tests "major attractions that will be incorporated into game enhancements" at its stores, *id.* at 5, and is "very choosy about which games are allowed into Chuck E. Cheese's," Ex. D ("Our Promise to Parents").

Food across the stores is uniform as well. "All . . . stores offer dining selections consisting of a variety of pizzas, sandwiches, wings, appetizers, a salad bar, beverages and desserts." Ex. A (CEC 2013 Form 10-K) at 27. The majority of food, beverages, and other supplies used in Company-owned stores is "distributed under a system-wide agreement" with a

single major distributor.  Ex. E (CEC 2012 Form 10-K) at 5; *see also* Ex. A (CEC 2013 Form 10-K) at 6 (noting switch to a new single distributor).

CEC centrally manages numerous other aspects of the customer experience.  For instance, it centrally analyzes and sets prices for its products and distributes "value offers"—i.e. rewards and discounts—on its Company website.  Ex. A (CEC 2013 Form 10-K) at 6, 25.  It requires stores to communicate its "value and entertainment offerings, including package deals, coupons, all games are one token and the Chuck E. Cheese live performances and ticket giveaway every hour on the half-hour."  *Id.* at 25.  It even dictates, corporation-wide, details as minor as "notifying our customers of the location of free hand sanitizer stations throughout the store."  *Id.* at 6.  It also uses a company-wide guest survey tool to gather customer feedback.  *Id.*

Finally, Chuck E. Cheese's stores are all staffed according to the same basic model.  Each store "typically employs a general manager, one or two managers, an electronic specialist who is responsible for repair and maintenance of the robotic characters, games and rides and approximately 20 to 40 food preparation and service employees, many of whom work part-time."  *Id.* at 8; *see also* Ex. F ("Career Opportunities") (listing in-store positions).

## II.      CEC Orients and Trains All AMs and SAMs the Same Way, Regardless of Location.

CEC's emphasis on consistency in all of its stores is reflected in its training of AMs.  CEC sends AMs to a training store for their region after they are hired.  Ex. B (Wright Decl.) ¶ 9.  There, CEC provides AMs with the same training that it provides to its hourly, non-exempt employees.  *Id.* ¶ 11.  The training covers tasks such as running the cash register, making pizza, operating the Kid Check®, and fixing games.  *Id.* ¶ 10.

With this training, AMs are able to transfer fluidly from one store to another, without any additional training.  *Id.* ¶ 25.  For instance, Wright worked in four different stores without any

5

additional training.  *Id.* ¶ 24.  When Wright became a SAM, CEC did not provide him with any

additional training and did not re-train him when he moved from store to store.  *Id.* ¶¶ 13, 24.

### III.       CEC AMs and SAMs All Perform the Same Primary Job Duties.

CEC's own job postings reflect that AMs and SAMs perform the same job duties

regardless of store location.  *See, e.g.*, Ex. G (Decatur, AL AM Job Posting); Ex. H (Harlem, NY

AM Job Posting); Ex. I (Las Vegas, NV AM Job Posting); Ex. J (Indianapolis, IN AM Job

Posting); Ex. K (Aurora, CO SAM Job Posting); Ex. L (Brooklyn, NY SAM Job Posting); Ex. M

(Kennesaw, GA SAM Job Posting); Ex. N (Pasadena, CA SAM Job Posting).

There is little, if any, difference between the AM and SAM positions.  CEC itself

describes the AM and SAM positions almost identically.  *Compare, e.g.*, Ex. O (Towson, MD

AM Job Posting), *with* Ex. P (Towson, MD SAM Job Posting).  Similarly, Wright's duties

remained the same when he became a SAM.  Ex. B (Wright Decl.) ¶ 8.

AMs and SAMs spend the vast majority of their time performing the same manual and

customer service tasks performed by CEC's hourly, non-exempt employees.  Ex. B (Wright

Decl.) ¶ 18.  These tasks include working the cash register, operating the Kid Check®, cleaning

tables and other parts of the facility, cooking, acting as a "host" for parties, and dressing up as

Chuck E. Cheese.  *Id.*

Their duties do not vary from store or store.  For example, Wright performed the same

non-exempt tasks at each of the four Chuck E. Cheese's locations where he worked.  *Id.* ¶¶ 8, 20,

23.  Wright also observed at least four other AMs and SAMs performing non-exempt work.  *Id.* ¶

26. CEC's job descriptions for both the AM and SAM positions require applicants to be able to

lift or carry objects weighing up to 50 pounds and stand, bend, kneel, reach, push/pull, walk, and

squat.  *See, e.g.*, Ex. G (Decatur, AL AM Job Posting); Ex. H (Harlem, NY AM Job Posting);

Ex. I (Las Vegas, NV AM Job Posting); Ex. J (Indianapolis, IN AM Job Posting); Ex. K (Aurora, CO SAM Job Posting); Ex. L (Brooklyn, NY SAM Job Posting); Ex. M (Kennesaw, GA SAM Job Posting); Ex. N (Pasadena, CA SAM Job Posting).

CEC takes advantage of AMs' and SAMs' salaried status by using them to work long hours to perform non-exempt manual tasks that it should pay non-exempt, hourly employees to perform.  CEC simply does not employ enough hourly employees to complete all of the non-exempt work.  Ex. B (Wright Decl.) ¶¶ 15-17.  Although AMs and SAMs are typically scheduled for 50 hours of work per week, they often work hours beyond their scheduled shifts performing non-exempt work that the hourly employees are unable to complete during their shifts.  *Id.* ¶ 16.

**IV.      CEC Classified Plaintiff, AMs, and SAMs as Exempt.**

Until recently, when CEC began to reclassify AMs and SAMs as non-exempt, CEC classified them as "exempt" from the FLSA's overtime protections and not entitled to overtime for their hours over forty.  Ex. B (Wright Decl.) ¶ 7.  Earlier this year, CEC began reclassifying AMs and SAMs nationwide as non-exempt hourly employees.  *Id.* ¶ 28.

**ARGUMENT**

**I.      Court Authorized Notice Is Fair and Efficient, and Advances the FLSA's Goals.**

The FLSA authorizes aggrieved employees to bring a collective action "on behalf of themselves and other employees similarly situated."  29 U.S.C. § 216(b).  In furtherance of the FLSA's "broad remedial purpose," courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings.  *Braunstein v. E. Photo. Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979); *Myers*, 624 F.3d at 554 ("[D]istrict courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to

opt-in as represented plaintiffs") (citation omitted); *see also Dilonez v. Fox Linen Serv. Inc.*, No. 13 Civ. 845, 2014 WL 3893094, at *3, 5 (E.D.N.Y. July 25, 2014); *Batres v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014); *Tutein v. Esteemed Patrol Inc.*, No. 12 Civ. 1847, 2013 WL 8115441, at *2-3 (E.D.N.Y. June 10, 2013) (Reyes, J.); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 392 (E.D.N.Y. 2010).

Collective actions provide workers with an opportunity to "lower individual costs to vindicate rights by the pooling of resources," and enable the "efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Nationwide notice here will provide collective members with a single forum in which to determine whether CEC's uniform classification policy was lawful.

Prompt notice is necessary to protect the rights of AMs and SAMs. Employees must receive timely notice in order for the "intended benefits of the collective action . . . to accrue." *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007). The FLSA's statute of limitations continues to run until an employee affirmatively opts in to the case by filing a written consent to join. 29 U.S.C. § 216(b); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997); *see also Summa*, 715 F. Supp. 2d at 385. Therefore, it is critical that employees receive notice of the suit and have the opportunity to opt in as soon as possible, before their claims are reduced or extinguished by the passage of time. *See Pippins v. KPMG LLP*, No. 11 Civ. 0377, 2012 WL 19379, at *5 (S.D.N.Y. Jan. 3, 2012).

## II.      Plaintiff Exceeds His Low Burden for Conditional Certification.

### A.      Plaintiff's Burden Is Minimal.

The Second Circuit has endorsed the two-step method commonly used by courts when faced with a motion for conditional certification under the FLSA. *See Myers*, 624 F.3d at 554-

55; *see also Rosario v. Valentine Ave. Disc. Store, Co., Inc.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y.

2011).  At the first stage, the court makes "an initial determination to send notice to potential

opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a

FLSA violation has occurred."  *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL

4801784, at *2 (E.D.N.Y. Oct. 10, 2012) (quoting *Myers*, 624 F.3d at 555) (internal quotation

marks omitted).  Once this is established, the court will conditionally certify the collective and

permit notice to issue to potential collective members, who are permitted to join the action.  *Id.*[5]

Plaintiff's burden at this initial stage is minimal.  *Puglisi*, 998 F. Supp. 2d at 99.  Plaintiff

needs only to make "a modest factual-showing . . . that [he] and potential plaintiffs together were

victims of a common policy or plan that violated the law."  *Tutien*, 2013 WL 8115441, at * 2

(quoting *Myers*, 624 F.3d at 555) (internal quotation marks omitted).  To satisfy his burden,

Plaintiff "need not show an actual violation of the FLSA, but merely that a factual nexus exists

between his or her situation and the situation of other current and former employees."  *Wraga*,

2006 WL 2443554, at *1 (quoting *Hoffman*, 982 F. Supp. at 262) (internal quotation marks

omitted); *see also Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 346

(E.D.N.Y. 2012) ("[I]n deciding whether to grant the Plaintiffs' motion, the Court must merely

find some identifiable factual nexus which binds the named plaintiffs and potential class

members together as victims of a particular practice") (quoting *Hoffman*, 982 F. Supp. at 261)

(internal quotation marks omitted).

In an FLSA exemption case like this one, a plaintiff can meet his burden "by making

some showing that 'there are other employees . . . who are similarly situated with respect to their

---

[5]     At the second stage, after discovery, the court can determine whether the individuals who
have joined the case as collective members are "in fact" similarly situated to one another.  *Myers*,
624 F.3d at 555.

job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555 (alteration in original) (quoting *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1259 (11th Cir. 2008)).

At the first step, the court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Batres*, 2014 WL 2111080, at *1 (quoting *Romero v. H.B. Auto. Grp., Inc.*, No. 11 Civ. 386, 2012 WL 1514810, at *9 (S.D.N.Y May 1, 2012)) (internal quotation marks omitted); *Summa*, 2008 WL 3852160, at *2; *see also Chen v. Oceanica Chinese Rest., Inc.*, No. 13 Civ. 4623, 2014 WL 1338315 at *3 (E.D.N.Y. April 2, 2014) (the court "need not evaluate the underlying merits of a plaintiff's claims" at this first stage) (internal quotation marks and citation omitted).  This is because "[a]t this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Stevens*, 2012 WL 4801784, at *2 (internal quotation marks omitted) (overruling objections to report and recommendation).

Furthermore, "[a]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Rosario*, 828 F. Supp. 2d at 514. This is because a plaintiff "is not required to demonstrate at this early stage that his duties were identical to those of all other [proposed plaintiffs].  Instead, he must show that he was similarly situated to other [proposed plaintiffs] with respect to the claimed violation of the FLSA." *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361, 08 Civ. 11364, 2010 WL 2465488, at *8 (S.D.N.Y. June 16, 2010).

"The burden at this first step is minimal because even if the court determines that the potential class members are 'similarly situated,' such a determination is preliminary and it 'may be modified or reversed at the second certification [step].'" *Puglisi*, 998 F. Supp. 2d at 99 (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc.* 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012)); *see also Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 1193836, at *4 (S.D.N.Y. Apr. 6, 2012) ("The burden imposed at the first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated.'").

"Because the standard at the first stage is fairly lenient, courts applying it typically grant[] conditional certification." *Amador v. Morgan Stanley & Co.*, No. 11 Civ. 4326, 2013 WL 494020, at *3 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks and citation omitted); *see also Poplawski v. Metroplex on the Atl., LLC*, No. 11 Civ. 3765, 2012 WL 1107711, at *4 (E.D.N.Y. Apr. 2, 2012) (conditional certification is "typically granted" once lenient standard is met).

**B.    Plaintiff, AMs, and SAMs Are Similarly Situated with Respect to Their Classification as Exempt Employees.**

This lawsuit challenges a straightforward, uniform CEC policy—its classification of AMs and SAMs as exempt from the FLSA's overtime requirements and its failure to pay them overtime as required under 29 U.S.C. § 207(a)(1).  Courts in the Second Circuit have found allegations of "blanket" classification policies such as CEC's, without much more, to meet the low threshold for conditional certification.  *See, e.g.*, *Ravenell v. Avis Budget Car Rental, LLC*, No. 08 Civ. 2113, 2010 WL 2921508, at *4 (E.D.N.Y. July 19, 2010) (allegations that all shift managers nationwide were classified as exempt, together with job advertisements and plaintiffs' testimony, satisfy the low standard for conditional certification); *Indergit*, 2010 WL 2465488, at

11

*4 ("It may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' substantial allegations that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy.") (quoting *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006) ("*Damassia I*")) (internal quotation marks omitted); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008) ("*Damassia II*") (a "blanket determination is evidence that differences in the position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements").

Here, until recently, CEC uniformly classified AMs and SAMs as exempt, irrespective of the store at which they worked and without an individualized analysis of their job duties.  Ex. B (Wright Decl.) ¶¶ 2-8, 27.  In addition, CEC has recently begun a company-wide reclassification of salaried, exempt AMs and SAMs to non-exempt status.  *Id.* ¶ 28.

## C.   Plaintiff, AMs, and SAMs Are Similarly Situated with Respect to Their Job Duties.

Plaintiff, AMs, and SAMs all perform the same primary job duties.  CEC's own job postings, which are identical nationwide, demonstrate its view that all AMs and SAMs perform the same job duties from store to store.  *See* Statement of Facts, *supra* at 6-7.  CEC also trained all AMs and SAMs to perform the same duties and regularly transferred these employees from one store to another without any additional training.  *Id.* at 5-6.

In addition, Plaintiff worked at four Chuck E. Cheese's stores as an AM and at two stores as a SAM, and performed the same primary duties regardless of the store or position in which he worked.  Ex. B (Wright Decl.) ¶ 20.  Specifically, as both an AM and as a SAM, Plaintiff spent the vast majority of his time performing non-exempt, manual and customer service tasks, such as

12

working the cash register, operating the Kid Check®, cleaning , cooking, acting as a "host" for parties, and dressing up as Chuck E. Cheese. *Id.* ¶ 18.  Furthermore, over the course of his employment, he observed at least four other AMs and SAMs performing these same primary job duties. *Id.* at 26.

Courts routinely grant conditional certification where, as here, plaintiffs rely on job descriptions and affidavits showing that collective members performed similar job duties. *See, e.g.*, *McEarchen v. Urban Outfitters, Inc.*, No. 13 Civ. 3569, 2014 WL 4701164, at *1-2 (E.D.N.Y. Sept. 23, 2014) (affirming order granting conditional certification based on employer's common description of collective members' duties); *Puglisi*, 998 F. Supp. 2d at 100 (granting conditional certification based on similar job postings which "tend to suggest that ASMs across the nation are treated uniformly to some degree, and that they have similar job duties and requirements," as well as affidavits from employees who worked in several locations); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 184 (D. Conn. 2010) (conditionally certifying nationwide collective of operations managers based on plaintiff's affidavit and common job descriptions); *Ravenell*, 2010 WL 2921508, at *4 (conditionally certifying nationwide collective of shift managers based on employee affidavits, job advertisements, and training materials that demonstrated a common policy of misclassification); *Indergit*, 2010 WL 2465488, at *5 (conditionally certifying nationwide collective of store managers based on affidavits and common job descriptions).

### D.   The Court Should Not Weigh the Merits or Consider Conflicting Evidence of Collective Members' Duties at the Conditional Certification Stage.

Any factual arguments that CEC may raise about the duties of AMs and SAMs do not preclude conditional certification for three reasons.  First, the arguments are premature.  Plaintiff needs only to make a "modest factual showing" that he and the potential collective members

13

were subject to a common policy that violated the FLSA.  *Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010) (quoting *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)) (internal quotation marks omitted).  Any evidence that CEC submits can "[a]t most . . . raise questions as to whether plaintiff[] could prevail under a more stringent standard and whether the opt-in plaintiffs will survive a decertification motion at the close of discovery." *Damassia I*, 2006 WL 2853971, at *5.  Such arguments are "inappropriate" at the initial conditional certification stage.  *Id.* at *4.  At the second stage, CEC will have "ample opportunity" to demonstrate that Plaintiff's case should not proceed as a collective action.  *Id.* at *7; *see also Aros*, 269 F.R.D. at 180 (declining to review declarations submitted by defendant at conditional certification stage); *Cohen*, 686 F. Supp. 2d at 330 (refusing to "wade into a thicket of competing factual assertions at th[e] preliminary stage" where the employer sought to counter factual assertions set forth in affidavits submitted by the plaintiff).  At that stage, the Court can weigh CEC's evidence against Plaintiff's evidence and decide whether the collective should survive.  *Myers*, 624 F.3d at 555.  The proper focus for now is on Plaintiff's submission and whether it meets the low burden required for conditional certification.

Second, the standard defense argument—that no two workers are alike and that the Court must undertake an individualized, person-by-person analysis to resolve the case—is undermined here by the fact that CEC classified all AMs and SAMs as exempt and then subsequently reclassified them as non-exempt.  *See* Ex. B (Wright Decl.) ¶¶ 7, 28; ECF No. 1 (Compl.) ¶ 73.  The fact that Defendant "treated [AMs and SAMs] collectively . . . [by] classifying them as exempt . . . militates strongly in favor of granting certification and cuts against its argument that individualized inquiries will be necessary." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 161

(S.D.N.Y. 2014) (internal quotation marks and citation omitted).  Any differences among AMs'

and SAMs' duties were clearly "not material" to CEC's "determination of whether the job[s]

[were] exempt from overtime requirements."  *Damassia II*, 250 F.R.D. at 159.

Third, conditional certification does not require all collective members to perform

identical duties.  Instead, Plaintiff must show only "that he was similarly situated to other

[collective members] with respect to the claimed violation of the FLSA."  *Indergit*, 2010 WL

2465488, at *8; *see also Cano*, 2009 WL 5710143, at *7 ("It is not necessary for the purposes of

conditional certification that the prospective class members all performed the same duties, or

worked during the same time periods, or worked at the same locations as the named plaintiffs.").

"Courts have found employees similarly situated for the purposes of conditional certification

even if they performed different job functions or worked at different locations, as long as they

were subject to the same allegedly unlawful policy."  *Amador*, 2013 WL 494020, at *5 n.5

(quoting *Harhash v. Infinity W. Shoes, Inc.*, No. 10 Civ. 8285, 2011 WL 4001072, at *3

(S.D.N.Y. Aug. 25, 2011)) (internal quotation marks omitted); *Diaz v. S & H Bondi's Dep't

Store*, No. 10 Civ. 7676, 2012 WL 137460, at *6 (S.D.N.Y. Jan. 18, 2012) (same); *Holbrook v.

Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) ("The consistent manner in which

Smith & Hawken classified its own [assistant store managers] is sufficient to carry [the

plaintiff's] burden, even in the presence of minute factual variances in treatment between store

locations.").

## III.    The Court Should Approve Plaintiff's Proposed Notice.

Plaintiff requests that the Court authorize him to send the Proposed Notice, attached to

the Turner Declaration as Exhibit Q, to all individuals who have worked as exempt AMs and

SAMs at any time between October 17, 2011 and the present ("Collective Members").  *See*

*Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2013 WL 8367807, at *9 (E.D.N.Y.

Sept. 19, 2013) (tying opt-in period to "the filing of the complaint is more appropriate since

equitable tolling issues often arise for prospective plaintiffs"); *Winfield v. Citibank, N.A.*, 843 F.

Supp. 2d 397, 410 (S.D.N.Y. 2012) ("because equitable tolling issues often arise for prospective

plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing

of the complaint").  The Proposed Notice is "timely, accurate, and informative," and should be

approved.  *Hoffmann-La Roche*, 493 U.S. at 172.

   In order to facilitate notice, Plaintiff requests that the Court order CEC to produce a

computer-readable list of the names, last known mailing addresses, last known telephone

numbers, last known email addresses, and work locations for all Collective Members, and the

last four digits of Social Security numbers for those Collective Members whose notices are

returned undeliverable.  The production of such contact information is consistent with "the goals

of the notice: to make as many potential plaintiffs as possible aware of this action and their right

to opt in . . . ."  *Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 273 (S.D.N.Y. 2012)

(internal quotation marks and citation omitted).  Courts routinely grant such requests.  *See*

*Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 130 (S.D.N.Y. 2014) (ordering production of

computer-readable list of all names, addresses, telephone numbers, e-mail addresses, and social

security numbers for distribution of notice); *Hamadou v. Hess Corp.*, No. 12 Civ. 0250, 2013 WL

164009, at *16 (S.D.N.Y. Jan. 16, 2013) (requiring defendants to supply a "computer-readable

list containing all potential collective action members' names, last known mailing addresses, last

known telephone numbers, work locations, e-mail addresses, dates of employment, dates of

birth, and last four digits of the individuals' Social Security numbers"); *Ack v. Manhattan Beer*

*Distribs., Inc.*, No. 11 Civ. 5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (ordering

the production of names, addresses, phone numbers, and e-mail addresses); *Pippins*, 2012 WL

19379, at *14 ("[G]iven the reality of communications today, . . . email notice in addition to

notice by first class mail is entirely appropriate."); *Gambino v. Harvard Prot. Servs. LLC*, No. 10

Civ. 983, 2011 WL 102691, at *2-3 (S.D.N.Y. Jan. 11, 2011) (ordering the production, in a

computer-readable format, of names, mailing addresses, telephone numbers, and email addresses

of potential opt-in plaintiffs).

The Court should also authorize Plaintiff to send a second reminder postcard, attached to

the Turner Decl. as Exhibit R, part-way through the notice period.  It is well-documented that

people often disregard collective action notices.  *See* Andrew C. Brunsden, *Hybrid Class*

*Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J.

Emp. & Lab. L. 269, 295 (2008).  Courts in this Circuit regularly authorize reminder notices in

order to increase the likelihood that collective members receive notice of their rights.[6]

Defendant has no reason to oppose a reminder mailing other than that it may increase the

participation rate, which is not a good reason.  Plaintiff will bear the cost of the reminder

mailing, and the reminder mailing will not change the end of the notice period.  Defendant will

not be prejudiced at all.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) conditionally

certify the proposed collective; (2) order CEC to produce a computer-readable data file

---

[6]      *See Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y.
Sept. 20, 2013) (authorizing reminder notice "[g]iven that notice under the FLSA is intended to
inform as many potential plaintiffs as possible of the collective action and their right to opt-in");
*Morris*, 896 F. Supp. 2d at 275 (same); *see also Sharma v. Burberry Ltd.*, No. 12 Civ. 6356,
2014 WL 4385426, at *21 (E.D.N.Y. Sept. 4, 2014) (authorizing reminder notices); *Puglisi*, 998
F. Supp. 2d at 102 (same); *Limarvin v. Edo Rest. Corp.*, No. 11 Civ. 7356, 2013 WL 371571, at
*3-4 (S.D.N.Y. Jan. 21, 2013) (same).

containing the names, last known mailing addresses, last known telephone numbers, last known

email addresses, and work locations for all Collective Members, and the last four digits of Social

Security numbers for those Collective Members whose notices are returned undeliverable; and

(3) authorize the issuance of the Proposed Notice to all Collective Members by U.S. Mail and

email, and a reminder notice during the opt-in period.

Dated: December 12, 2014
      New York, New York

                                        Respectfully submitted,

                              By:  */s/ Juno Turner*
                                     Juno Turner

                                     Rachel Bien
                                     Juno Turner
                                     Outten & Golden LLP
                                     3 Park Avenue, 29th Floor
                                     New York, New York 10016
                                     Telephone: (212) 245-1000

                                     *Attorneys for Plaintiff*