**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

WILEY WRIGHT, individually and on behalf of
all others similarly situated,

                Plaintiff,

   v.

CEC ENTERTAINMENT, INC., d/b/a/ CHUCK
E. CHEESE'S

                Defendant.

No. 14 Civ. 6110 (MKB) (RER)

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED**
**NOTICE PURSUANT TO SECTION 216(b) OF THE FLSA**

## TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT.........................................................................................1

II.   ARGUMENT ...............................................................................................................4

      A.    Governing Legal Standard ...................................................................................4

      B.    Plaintiff Is Not Similarly Situated to AMs with Potential FLSA Claims
            Because He Was a SAM During the Entire Relevant Time Period ........................6

      C.    Plaintiff Has Not Demonstrated that He Is Similarly Situated to the
            Proposed Collective ...........................................................................................7

            1.    Plaintiff Has Not Presented Sufficient Evidence Regarding the Job
                  Duties Performed by Other Members of the Proposed Collective to
                  Establish That He Is Similarly Situated to Them.........................................8

            2.    Uniform Job Postings Do Not Demonstrate that Plaintiff Is
                  Similarly Situated to the Proposed Collective ...........................................10

            3.    Uniform Training Programs Do Not Demonstrate that Plaintiff Is
                  Similarly Situated to the Proposed Collective ...........................................12

            4.    Consistencies in CEC's Brand Do Not Demonstrate that Plaintiff Is
                  Similarly Situated to the Proposed Collective ...........................................14

      D.    Conditional Certification Should be Denied Entiretly, But if the Court
            Conditionally Certifies Any Collective, The Collective Should Be Limited
            to the Locations at Which Plaintiff Worked..........................................................16

      E.    Conditional Certification Should be Denied Entirely, But if the Court
            Conditionally Certifies Any Collective, It Should Not Authorize Plaintiff's
            Proposed Notice .................................................................................................17

III.  CONCLUSION............................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ahmed v. T.J. Maxx Corp.*,
   No. 10 Civ. 3609(ADS)(ARL), 2014 WL 5280423 (E.D.N.Y. Sept. 24, 2014) ............1, 2, 11

*Davis v. Lenox Hill Hosp.*,
   No. 03 Civ. 3746 (DLC), 2004 WL 1926086 (S.D.N.Y Aug. 31, 2004)..................................7

*Diaz v. S & H Bondi's Dep't Store*,
   No. 10 Civ. 7676 (PGG), 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) .................................19

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007).................................................................................21

*Guillen v. Marshalls of MA, Inc.*,
   750 F. Supp. 2d 469 (S.D.N.Y. 2010).......................................................................... *passim*

*Guillen v. Marshalls of MA, Inc.*,
   841 F. Supp. 2d 797 (S.D.N.Y. 2012), *adopted by* 2012 WL 2588771
   (S.D.N.Y. July 02, 2012) ...................................................................................5, 14, 15, 16

*Guzelgurgenli v. Prime Time Specials Inc.*,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) .................................................................................21

*Hernandez v. Immortal Rise, Inc.*,
   No. 11 Civ. 4360 (RRM) (LB), 2012 WL 4369746 (E.D.N.Y. Sept. 24, 2012) ....................19

*Hinterberger v. Catholic Health Sys.*,
   No. 08 Civ. 380S, 2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009)...................................20, 21

*Indergit v. Rite Aid Corp.*,
   Nos. 08 Civ. 9361 (PGG), 08 Civ. 11364 (PGG), 2010 WL 2465488
   (S.D.N.Y. June 16, 2010).....................................................................................................8

*Jenkins v. TJS Companies, Inc.*,
   853 F. Supp. 2d 317 (E.D.N.Y. 2012) .........................................................................2, 5, 12

*Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*,
   No. 13 Civ. 60 (ILG), 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ..................................10

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007).....................................................................................20, 21

*Khan v. Airport Mgmt. Servs., LLC*,
   No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ................5, 8, 10, 11

ii

*Knispel v. Chrysler Grp. LLC*,
   No. 11 Civ. 11886, 2012 WL 553722 (E.D.Mich. Feb. 21, 2012) ...................................19, 21

*Laroque v. Domino's Pizza, LLC*,
   557 F. Supp. 2d 346 (E.D.N.Y. 2008) ...............................................................................17, 19

*Morales v. Plantworks, Inc.*,
   No. 05 Civ. 2349(DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)........................................6

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)................................................................................................4, 5

*Prizmic v. Armour, Inc.*,
   No. 05 Civ. 2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ...........................................6

*Puglisi v. TD Bank, N.A.*,
   998 F. Supp. 2d 95 (E.D.N.Y. 2014) ......................................................................................8

*Qing Gu v. T.C. Chikurin*,
   No. 13 Civ. 2322 (SJ)(MDG), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014) ......................10

*Ravenell v. Avis Budget Car Rental, LLC*,
   No. 08 Civ. 2113 (SLT)(ALC), 2010 WL 2921508 (E.D.N.Y. July 19, 2010)........................8

*Ritz v. Mike Rory Corp.*,
   No. 12 Civ. 367 (JBW) (RML), 2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013)......................19

*Sanchez v. JMP Ventures, L.L.C.*,
   No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ..................................10

*Sharma v. Burberry Ltd.*,
   No. 12 Civ. 6356 (LDW)(AKT), 2014 WL 4385426
   (E.D.N.Y. Sept. 4, 2014).......................................................................................10, 17, 20

*Stubbs v. McDonald's Corp.*,
   227 F.R.D. 661 (D. Kan. 2004).............................................................................................7

*Trinidad v. Pret a Manger (USA) Ltd.*,
   962 F. Supp. 2d 545 (S.D.N.Y. 2013)...................................................................................17

*Tutein v. Esteemed Patrol Inc.*,
   No. 12 Civ. 1847 (KAM) (RER), 2013 WL 8115441 (E.D.N.Y. June 10, 2013) ..................22

*Vasquez v. Vitamin Shoppe Indus., Inc.*,
   No. 10 Civ. 8220 (LTS) (THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011).............2, 5, 16

*Wraga v. Marble Lite, Inc.*,
   No. 05 Civ. 5038, 2006 WL 2443554 (E.D.N.Y. Aug. 22, 2006)............................................8

*Zerilli-Edelglass v. New York City Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003)..................................................................................................18

**STATUTES**

29 U.S.C.
    § 216(b)..................................................................................................................1, 4
    § 255(a)........................................................................................................................6
    § 256(b)..................................................................................................................6, 18

## I.       PRELIMINARY STATEMENT

Plaintiff Wiley Wright alleges that he and other Assistant Managers ("AMs") and Senior Assistant Managers ("SAMs") at Chuck E. Cheese's ("CEC") locations across the country were improperly classified as exempt from federal and New York overtime requirements.  By his current motion, plaintiff seeks an order (1) conditionally certifying a nationwide class of all exempt AMs and SAMs that have worked at any CEC location from October 17, 2011 to the present (the "Proposed Collective"), (2) requiring CEC to provide the names, addresses, telephone numbers, email addresses, and work locations for each individual in the Proposed Collective, and (3) authorizing plaintiff to send notice to members of the Proposed Collective informing them of the existence of this lawsuit and their opportunity to join it pursuant to section 216(b) of the Fair Labor Standards Act ("FLSA").

Plaintiff's motion should be denied.  Most significantly, plaintiff has not shown – as he must – that he is "similarly situated" to the other individuals he seeks to include in his litigation.  *See* 29 U.S.C. § 216(b).  To satisfy the FLSA's "similarly situated" requirement, plaintiff must provide the court with "'some identifiable factual nexus which binds [plaintiff] and potential class members together as victims of particular illegal practices.'"  *See Ahmed v. T.J. Maxx Corp.*, No. 10 Civ. 3609(ADS)(ARL), 2014 WL 5280423, at *3 (E.D.N.Y. Sept. 24, 2014) (citations omitted) (emphasis added).  Because plaintiff must demonstrate that he and the Proposed Collective are similarly situated with respect to common illegal practices, he may not satisfy his burden merely by alleging that he and other AMs and SAMs held similar job titles and were all classified as exempt; rather, plaintiff must show that he and the Proposed Collective were similarly situated with respect to their performance of *actual job duties* which belied their exempt status.  *See, e.g., id.* at *5 (denying conditional certification where named plaintiff failed

to present sufficient evidence that members of the proposed collective were similarly situated to him with respect to the performance of non-managerial duties).

Although plaintiff characterizes his current burden as minimal, "certification is not automatic." *See Vasquez v. Vitamin Shoppe Indus., Inc.*, No. 10 Civ. 8220 (LTS) (THK), 2011 WL 2693712, at *3 (S.D.N.Y. July 11, 2011).  Even applying the most lenient standard for conditional certification, plaintiff has not come close to demonstrating that his personal experiences at a handful of stores in New York City is representative of, or similar to, the experiences of all AMs and SAMs at every CEC location nationwide.  Plaintiff's argument boils down to a single flawed assumption - that because he, as an exempt AM or SAM, allegedly performed predominantly nonexempt tasks, then all AMs or SAMs across the country must also have been misclassified as exempt, regardless of their actual job duties, simply because they and plaintiff shared the same job titles.  Such sweeping overgeneralizations have been rejected by numerous courts in this Circuit.  *See, e.g., Ahmed,* 2014 WL 5280423, at *5 (finding a common job classification "insufficient in itself to warrant conditional certification."); *Jenkins v. TJS Companies, Inc.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012) ("[T]he mere classification of a group of employees—even a large or nationwide group—as exempt under the FLSA is not by itself sufficient to... render[] all putative class members as similarly situated for § 216(b) purposes.") (citations and internal quotation marks omitted); *Vasquez,* 2011 WL 2693712, at *4 (denying conditional certification of a nationwide class where "the only thread Plaintiff provides to link the handful of New York City SMs with their counterparts nationwide is their common exempt classification.").

While plaintiff devotes large swaths of his moving brief to highlighting corporate uniformities like consistent job postings and food options, such uniformities are irrelevant to

determining whether plaintiff and the Proposed Collective actually performed similar job duties. *See* Section II.C.2 to II.C.4 *infra*.  Plaintiff's only real evidence of exempt AMs and SAMs even purportedly performing nonexempt tasks is his own declaration, in which he provides only a cursory summary of the types of job duties he allegedly performed.  *See* Pl. Exh. B, Declaration of Wiley Wright ("Wright Decl.") at ¶¶ 18-22.  With respect to the other members of the Proposed Collective, plaintiff puts forth even less evidence of their purported job duties  - only a single paragraph in his declaration, in which he merely alleges that he "observed" four other employees performing the same duties as him, all while working (at most) at the same four New York City locations as him.  *See* Wright Decl. at ¶ 26.

In contrast to plaintiff's scant evidence, CEC submits evidence from five putative class members, who worked in three different states, including two declarants who worked in New York, the same state as plaintiff.  *See* Def. Exh. 1, Declaration of Samuel Pena, Jr. ("Pena Decl."), Exh. 2, Declaration of Jamie Blau ("Blau Decl."), Exh. 3, Declaration of Brian Spencer ("Spencer Decl."), Exh. 4, Declaration of Amy Hoard ("Hoard Decl."), Exh. 5, Declaration of Eric Lamb ("Lamb Decl.").[1]  All of these employees testify in great detail that their experiences were markedly different than the experiences plaintiff alleges, and that they performed management duties almost exclusively.  With respect to these five individuals, there can be no question that they and Wright are *not* similarly situated.[2]

---

[1] Defendant's exhibits are attached to the Declaration of Anastasia M. Kerdock in Support of Defendant's Opposition to Plaintiff's Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA.

[2] *Compare* Wright Decl. at ¶ 22 ("As an AM and SAM, I did not have authority to hire, fire, promote, or demote employees, or raise or lower their pay.") *with* Pena Decl. at 15 ("At West Islip, I was solely responsible for doing all of the hiring because the GM wasn't there."), ¶ 18 ("At Patchogue, I was also involved in promoting cast members from level 1 to level 2."); Blau Decl. at ¶ 7("As a SAM, I was very involved in the hiring process."); ¶ 8 ("For existing cast members, I was also in charge of making promotion decisions."); Spencer Decl. at ¶ 9 ("I was actively involved in interviewing and hiring potential candidates for open cast member positions."), ¶ 10 ("Additionally, as a SAM at both White Settlement and Arlington, I had authority to promote cast members."); ¶ 11 ("I also played a role in determining whether an employee should be terminated."); Hoard Decl. at  ¶ 10 ("My GM

Further, by plaintiff's own admission, ***he did not even work as an AM*** during the FLSA period.  *See* Wright Decl. at ¶¶ 1-6 (stating that from October 2011 forward plaintiff was employed as a SAM).  Accordingly, plaintiff was not similarly situated to other AMs who did work for CEC during the relevant time period.

In sum, where "there is virtually no basis on which to conclude that [employees] nationwide are similarly situated to [plaintiff] with respect to his allegation that he spent the majority of his time performing non-managerial tasks," conditional certification must be denied. *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 479 (S.D.N.Y. 2010) ("*Guillen I*").  Such is the case here, and plaintiff's pending motion should be denied in its entirety.

**II.  ARGUMENT**

A.   <u>Governing Legal Standard</u>

The collective action provisions of the FLSA provide that an employee may bring an action on behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).  A putative class member cannot become a "party plaintiff to [a section 216(b) collective action] unless he gives his consent in writing… and such consent is filed in the court in which such action is brought."  *Id.*  The FLSA does not prescribe a particular procedure for determining whether putative class members are "similarly situated," such that they may proceed collectively.  "Although they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)]… by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v.*

---

followed my recommendations concerning cast member cross training and promotion 95% of the time."); Lamb Decl. at ¶ 9 ("I was actively involved in interviewing and hiring potential candidates for open cast member positions."), ¶ 10 ("I probably recommended twenty different cast members for promotion. My recommendations were followed approximately 80% of the time.").

*Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (*citing Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)) (alteration in original).

To exercise their discretion, and in the absence of formal statutory guidelines, many district courts have followed an *ad hoc* two-tiered approach to addressing putative collective actions. *See id.* at 555. At the first stage, the court may send notice to potential opt-in plaintiffs who are "similarly situated" to the named plaintiff, upon the named plaintiff's showing that he and they "together were victims of a common policy or plan that violated the law." *See Myers*, 624 F.3d at 555 (citations omitted). *See also Jenkins,* 853 F. Supp. 2d at 322 ("It is axiomatic that, even at this preliminary stage, the Court must find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice.") (citations and internal quotations omitted). At the second stage, once discovery has concluded and the court has a fuller record before it, the court will determine whether the named plaintiff and the opt-in plaintiffs are, in fact, similarly situated, and will either allow the case to proceed to trial as a collective action, or decertify the collective and dismiss the opt-in plaintiffs without prejudice. *See Myers*, 624 F.3d at 555.

Though plaintiff's burden at this first stage may be modest, it "is not non-existent and the factual showing… must still be based on some substance." *Guillen I*, 750 F. Supp. 2d at 480; *see also Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012), *adopted by* 2012 WL 2588771 (S.D.N.Y. July 02, 2012) ("*Guillen II*"). To satisfy his burden, plaintiff must offer more than mere conclusory allegations that he is similarly situated to the Proposed Collective. *See Vasquez*, 2011 WL 2693712, at *3; *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *3 (S.D.N.Y. Nov. 16, 2011) ("'The modest factual showing' cannot be satisfied simply by 'unsupported allegations.'") (*citing Myers*, 624 F.3d at

5

555); *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349(DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006). Were courts to certify collective actions based on nothing more than a single plaintiff's unilateral and conclusory allegations, the conditional certification process would be rife for abuse. Plaintiffs could file spurious lawsuits simply in order to gain access to company records to fish for other potential claims and plaintiffs, and employers across the country would be forced to waste valuable resources and incur considerable legal expenses in the defense of illegitimate claims. *See, e.g., Prizmic v. Armour, Inc.*, No. 05 Civ. 2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) ("'A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations.' Absent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'") (citations omitted).

B.   Plaintiff Is Not Similarly Situated to AMs with Potential FLSA Claims Because He Was a SAM During the Entire Relevant Time Period

Plaintiff, by his own admission, is not similarly situated to AMs. He states in his declaration that he worked as a SAM during the entire relevant time period, effectively demonstrating that he is not, and cannot be, similarly situated to any AMs who could have actionable FLSA claims.

The FLSA has, at most, a three year statute of limitations, and then only if a court finds the violations were willful. *See* 29 U.S.C. § 255(a). Therefore, the earliest possible date from which plaintiff could have actionable FLSA claims is October 17, 2011, three years prior to the date plaintiff filed his complaint.[3] Wright states in his sworn declaration, however, that from October 2011 forward he worked only as a SAM. *See* Wright Decl. at ¶¶ 1-6. Since plaintiff did

---

[3] With respect to other members of the Proposed Collective, because the FLSA's statute of limitations continues to run on the claims of potential opt-in plaintiffs until they affirmatively join the case, the earliest date from which other members of the Proposed Collective may have actionable claims will be long after October 17, 2011. *See* 29 U.S.C. § 256(b).

not work as an AM *at all* during the time period in which other AMs could have accrued potential FLSA claims, it would be impossible for him to be similarly situated to them with respect to the job duties they performed during that time period.  Accordingly, the Court should not conditionally certify any collective that includes AMs as members.  *See, e.g., Davis v. Lenox Hill Hosp.*, No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *6-7 (S.D.N.Y. Aug. 31, 2004) (finding plaintiff "can only present a 'factual nexus' between her claims and those of other" employees who held the same job title); *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661, 665 (D. Kan. 2004) (finding plaintiff did not have standing to represent employees in job classification he never held).

C.    Plaintiff Has Not Demonstrated that He Is Similarly Situated to the Proposed Collective

Much of plaintiff's moving brief is devoted to making irrelevant observations and unsupported inferences about CEC's corporate structure, cobbled together from securities filings, internet postings, and, often, merely plaintiff's suppositions about what he assumes CEC's business strategy to be.  None of these corporate practices, or alleged corporate practices, demonstrate that other CEC employees performed job duties that were incompatible with an exempt classification.  Furthermore, and as explained below, plaintiff's observations about four other employees working at unspecified New York City locations, coupled with similarly worded job postings, allegedly uniform training, and CEC's corporate branding initiatives, do not establish that Wright and AMs or SAMs throughout the country are similarly situated with regard to the actual performance of non-exempt duties.   Because plaintiff has failed to meet his burden, conditional certification should be denied.

1.     *Plaintiff Has Not Presented Sufficient Evidence Regarding the Job Duties Performed by Other Members of the Proposed Collective to Establish That He Is Similarly Situated to Them*

In support of his assertion that other AMs and SAMs performed predominantly nonexempt duties, plaintiff submits a single declaration: his own.  In his declaration, there is a single paragraph about the duties of employees other than himself: "I observed other AMs and SAMs, including Errol Wilson, Liz Rodriguez, Juan Liriano, and Mario [last name unknown], performing the same job duties that I performed.  I observed them because we worked together as AMs and SAMs in the same store."  Wright Decl. at ¶ 26.

Though plaintiff's burden at this stage may be modest, his own conclusory allegations are insufficient to meet it.  *See, e.g., Khan,* 2011 WL 5597371, at *3 (finding unsupported allegations are insufficient to meet plaintiff's burden at conditional certification stage).[4]  Plaintiff has not provided any factual detail about these four other individuals from which the Court could analyze whether they even may be similarly situated to plaintiff.  Crucially, he fails to specify (a) when he "observed" or "worked together" with these individuals, including whether he worked with them during the potential FLSA period or earlier, (b) where these individuals worked when he allegedly observed them, including whether his allegation that they worked together "at the same store" means that he only observed them performing similar tasks at a single CEC location, (c) whether these individuals were AMs or SAMs when they were allegedly performing

---

[4] In many of the cases on which plaintiff relies in support of his motion, the court granted conditional certification only upon the presentation of evidence drawn from the testimony of *multiple* named plaintiffs and/or opt-in plaintiffs. *See Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 98, 100-101 (E.D.N.Y. 2014) (evidence from 13 putative class members in 7 different states); *Ravenell v. Avis Budget Car Rental, LLC*, No. 08 Civ. 2113 (SLT)(ALC), 2010 WL 2921508, at *1-3 (E.D.N.Y. July 19, 2010) (deposition testimony of 3 named plaintiffs and multiple opt-in plaintiffs); *Indergit v. Rite Aid Corp.*, Nos. 08 Civ. 9361 (PGG), 08 Civ. 11364 (PGG), 2010 WL 2465488, at *7 (S.D.N.Y. June 16, 2010) (affidavits from 3 individuals alleging common illegal practice).  In another case, plaintiff submitted only his own affidavit, but in that affidavit identified at least 18 other similarly situated employees, and described conversations he observed between some of those employees and the defendant in which the employees complained that they were not properly paid for overtime. *See Wraga v. Marble Lite, Inc.*, No. 05 Civ. 5038, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006).  Such detailed accounts are completely lacking from plaintiff's declaration in this case.

nonexempt tasks, (d) whether these individuals were being paid on a salaried or hourly basis at the time, (e) whether they were working more than 40 hours per week, (f) whether they were performing these tasks at the direction of their General Manager or of their own accord, and (g) whether he observed them performing nonexempt duties regularly or only sporadically. *See* Wright Decl. at ¶ 26.

 In contrast to plaintiff's conclusory allegations, CEC submits detailed declarations from employees in multiple states, including New York, who testify unambiguously that they spent the majority of their work time performing undisputedly managerial duties. *See, e.g.,* Pena Decl. at ¶ 21 ("Directing cast members was the main part of my job as a Manager. I would estimate that I spent about 80% of my time as a Manager making sure the store was running smoothly and that cast members were doing their jobs."); Blau Decl. at ¶ 6 ("There was very little down time as a SAM. I spent about 95% of my time at the store supervising cast members."); Spencer Decl. at ¶ 8 ("[S]upervising the cast members who worked beneath me was my most important responsibility as SAM."); Hoard Decl. at ¶ 8 ("[S]upervising the cast members who worked beneath me was my most important responsibility as a SAM, and I probably spent about 75% of my time each workday assigning tasks to cast members and supervising their performance."); Lamb Decl. at ¶ 8 ("I probably spent about 80% of my time each workday assigning tasks to cast members and supervising their performance.").[5] Clearly, these declarations demonstrate that the experiences of these employees were not similar to plaintiff's experiences.

---

[5] To the extent plaintiff tries to argue that he is unable to present evidence regarding the experiences of other employees because the parties have not yet exchanged discovery, the Court should reject plaintiff's argument outright. At the parties' initial hearing, the Court asked plaintiff's counsel whether they needed any information from CEC before making their anticipated motion for conditional certification, and plaintiff's counsel responded "obviously we wouldn't have submitted a letter to the court if we didn't think that we could make the motion now" and "I think we prefer to move sooner." *See* Transcript of November 20, 2014 hearing, ECF No. 20, at 11:22-12:8. Plaintiff cannot both make a strategic choice to move under § 216(b) early, and then also complain that he does not yet have access to the information he needs to support that motion.

The types of vague, generalized statements plaintiff makes are "precisely the kind of unsupported assertions and conclusory allegations that courts… have found to be insufficient to conditionally certify a class under § 216(b)." *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (denying conditional certification where plaintiff alleged common illegal practices based on his "observations" and "conversations" with other employees but failed to specify when or where those observations or conversations occurred) (citations omitted).[6]  Plaintiff's pending motion should therefore be denied.  *See, e.g., Khan*, 2011 WL 5597371 at *4 (denying conditional certification where plaintiff claimed to have personal knowledge that defendant hired at least 40 similarly situated employees, but identified only four by name); *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13 Civ. 60 (ILG), 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (denying conditional certification where plaintiff claimed to have personally observed other employees being subjected to illegal practices, but failed to identify the other employees).

2.   *Uniform Job Postings Do Not Demonstrate that Plaintiff Is Similarly Situated to the Proposed Collective*

In support of his argument that AMs and SAMs nationwide performed similar duties, plaintiff relies heavily on CEC's use of similar job postings when advertising for open AM and SAM positions, respectively.  *See* Pl. Br. at 6-7, 12-13; Pl. Exhs. G-P.  Whether CEC uses a uniform set of job postings is irrelevant.  The job postings themselves do not demonstrate that

---

[6] While courts in the Second Circuit have authorized sending notice to potential opt-in plaintiffs where the named plaintiff has provided some probative information regarding similarly situated employees, "'such as their names, their duties and their hours worked or where plaintiff provides affidavits from such employees setting forth the pertinent facts,'" there is no such evidence here.  *See Sharma v. Burberry Ltd.*, No. 12 Civ. 6356 (LDW)(AKT), 2014 WL 4385426, at *14 (E.D.N.Y. Sept. 4, 2014) (citations omitted).  "'[W]here plaintiffs fail to provide specific factual allegations, courts routinely deny leave to send a collective action notice.'"  *Id.  See also Qing Gu v. T.C. Chikurin*, No. 13 Civ. 2322 (SJ)(MDG), 2014 WL 1515877, at *3-4 (E.D.N.Y. Apr. 17, 2014) ("Plaintiffs fail to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations about not receiving minimum wage or overtime compensation.").

AMs or SAMs were misclassified, nor does plaintiff allege that they do.[7]  Rather, plaintiff alleges that his *actual* job duties did not support his exempt status, without reference or discussion as to whether his alleged *actual* job duties were similar to those contained in the job postings upon which he relies (and, in fact, they are not). *Compare* Wright Decl. at ¶¶ 18, 21 *with* Pl. Exh. G (stating the AM position "supervises and oversees daily store operations to ensure profitability," "builds sales and maximizes profit," and "coaches, teaches and motivates team.") and Pl. Exh. K (stating that the SAM position "is responsible for sourcing, interviewing, training, developing and evaluating Cast Members," and "exercis[ing] good business skills and judgment in cost control procedures, financial accounting, inventory levels, and labor management.").

Where, as here, a plaintiff does not challenge the legality of his employer's policy on its face, but rather the legality of the employer's *application* of that policy, "it is not sufficient for [plaintiff] to show that he and the proposed class of [AMs and SAMs] operated under the same job description.  Instead, he must show that he and the other [AMs and SAMs] were similarly situated with respect to the claim that they were required to perform non-managerial job duties in contravention of the formal job description." *Guillen I*, 750 F. Supp. 2d at 476.  *See also, Ahmed*, 2014 WL 5280423, at *5; *Khan*, 2011 WL 5597371, at *4 (finding plaintiff's reliance on centralized job descriptions "misplaced" where plaintiff was not attacking the formal policies but "asserting that he and other employees were not given duties in conformity with these policies.").

The only testimony from actual members of the Proposed Collective, however, demonstrates the opposite to be true.  For example, Wright claims in his declaration that he spent 95% of his time performing tasks such as "working the cash register, operating the Kid Check®,

---

[7] To the extent plaintiff intends to argue that the duties discussed in the job postings are evidence of misclassification, he has completely failed to lodge such a challenge in his moving brief.  Indeed, Plaintiff's moving brief contains *no* discussion of the contents of the job postings, other than to allege that they were all similar, and that they contained certain physical requirements.  *See* Pl. Br. at 6-7, 12-13; Pl. Exhs. G-P.

cleaning tables and other parts of the facility, cooking, acting as a 'host' for parties, and dressing up as Chuck E. Cheese." Wright Decl. at ¶ 18.  Unlike Wright, other members of the Proposed Collective, all of whom worked in other locations or states, claim that they spent the vast majority of their time actively supervising subordinate employees. *See e.g.,* Pena Decl. at ¶ 21 (stating 80% of his time was spent running the store and managing cast members); Blau Decl. at ¶ 6 (stating 95% of her time was spent supervising cast members); Spencer Decl. at ¶ 8 (stating supervising cast members was his main and most important responsibility); Hoard Decl. at ¶ 8 (stating 75% of her time each workday was spent assigning cast members work and supervising their performance); Lamb Decl. at ¶ 8 (stating 80% of his time each workday was spent assigning cast members work and supervising their performance).

The job postings do not, therefore, demonstrate that plaintiff is similarly situated to the Proposed Collective. *See, e.g., Jenkins*, 853 F. Supp. 2d at 321 (denying conditional certification where plaintiff presented evidence of uniform job descriptions, but did not provide affidavits or testimony from employees other than himself stating that they performed nonexempt duties).[8]

### 3. *Uniform Training Programs Do Not Demonstrate that Plaintiff Is Similarly Situated to the Proposed Collective*

Plaintiff's reliance on CEC's training programs is similarly misplaced. As an initial matter, plaintiff's allegations regarding CEC's training programs are limited to training for AMs, and contain no discussion of what training SAMs may have received. *See* Pl. Br. at 5-6; Wright Decl. at ¶¶ 9-13. Consequently, Plaintiff's training experience could not be probative of the experiences of other SAMs in the Proposed Collective. Moreover, because plaintiff alleges that

---

[8] Additionally, the Court should not consider the job postings at all because plaintiff does not provide enough information for the Court to accurately evaluate their relevance. Plaintiff does not identify where these job postings came from or when they were obtained. Yet, plaintiff points out in his moving brief that CEC recently began reclassifying all AMs and SAMs as nonexempt. *See* Pl. Br. at 7. The date of the job postings is therefore critical. To the extent these job postings are recent, they may not have applied to members of the Proposed Collective.

he was only trained once, outside the FLSA period, when he was first hired as an AM in 2008, his training has no bearing on whether plaintiff is similarly situated to the Proposed Collective with respect to actionable FLSA claims.  *See* Wright Decl. at ¶¶ 9-13.

Furthermore, even if plaintiff's training experiences had occurred during the relevant time period and did not exclude half of the job categories in the Proposed Collective, they would still not support his current motion.  Though plaintiff points out that he learned how to perform the same duties as cast members, this fact is irrelevant to determining what job duties members of the Proposed Collective actually performed *while working as AMs and SAMs*.  It is axiomatic that, as supervisors, AMs and SAMs would need to learn how the tasks allocated to the cast members they were responsible for supervising should be completed.  Without this knowledge they would be ineffective managers.  Nowhere does plaintiff allege that he was then further instructed during the training program to actually *perform* those nonexempt duties later while working in an exempt position.  *See* Wright Decl. at ¶¶ 9-13.  As such, whether AMs and SAMs are trained on how cast member duties should be performed is irrelevant to whether they are similarly situated to plaintiff with respect to his allegations of FLSA violations. *See Guillen I*, 750 F. Supp. 2d at 478 (denying conditional certification where putative class members "'received training regarding' certain apparently non-exempt tasks during the standardized management training program" but did "not say, however, that they were instructed in the training program to spend their work hours actually performing such tasks.").  *See also* Pena Decl. at ¶ 10 ("New manager training has multiple components.  Coordinators trained for 2 weeks, and Managers trained for 4 weeks.  The first part of the training involves learning all of the cast member functions, and understanding what tasks cast members must perform in each of the cast member areas.  The second part of the training involves learning manager functions, like

how to manage cast members and given them directions, and how to review and analyze reports.").

Plaintiff's allegations that employees were transferred between stores without additional training are similarly irrelevant to determining whether other AMs and SAMs performed job duties contrary to their exempt status.  Many, if not most, large retail organizations train employees in a uniform manner so that they may transfer as needed between locations.  Were such training programs de facto evidence of potential FLSA violations, every large retail company in the country could be subject to a nationwide collective action based on the untested allegations of a single employee.  In the instant case, as in the *Guillen* cases, there is no evidence of a common policy under which AMs and SAMs were expected to spend the majority of their time on nonexempt duties.  *See, e.g., Guillen I,* 750 F.Supp. at 478; *Guillen II,* 841 F. Supp. 2d at 799 (denying conditional certification despite evidence that all assistant store managers were "trained in a uniform manner to ensure consistency throughout Marshalls stores.").

### 4. *Consistencies in CEC's Brand Do Not Demonstrate that Plaintiff Is Similarly Situated to the Proposed Collective*

Plaintiff repeatedly draws the Court's attention to the fact that CEC takes various steps to protect the consistency of its brand across locations.  *See, e.g.*, Pl. Br. at 3 ("Each Chuck E. Cheese's store offers a uniform and consistent customer experience across various metrics."); 4 ("All stores employ a consistent entertainment formula."); 4 ("Food across the stores is uniform as well.").  Like his allegations of uniform job postings and training programs, plaintiff's allegations regarding CEC's branding initiatives also are entirely irrelevant to the pending motion.

Many of the supposedly "uniform" characteristics on which plaintiff hones in are really related to the experiences of CEC's customers and are wholly unrelated to whether certain

employees of CEC were or were not misclassified under the FLSA.  *See, e.g.,* Pl. Br. at 4 (stating CEC provides seating in game room areas so parents can observe their children); 4 (stating CEC uses a single token for all games and rides across locations); 5 (stating CEC notifies customers of the location of free hand sanitizer).  Most, if not all, companies aim to protect their brand by giving their customers a consistent experience.  A regular patron of Taco Bell would undoubtedly be displeased if he were to visit a location for the first time only to learn that this particular Taco Bell only served hot dogs.  That all Taco Bells serve tacos is not de facto evidence that all Taco Bell employees are similarly situated under the FLSA.

If plaintiff's purpose in detailing uniformities in CEC's brand is to infer that the structure of CEC itself justifies conditional certification of a nationwide collective action, his inference plainly goes too far.  By plaintiff's logic, every employer with a recognizable brand and exempt employees would be forced to defend a nationwide collective action and divulge confidential information regarding countless employees based on, as is the case here, a single employee's unproven allegations that he was misclassified.  Such flawed logic plainly does not establish that plaintiff is similarly situated to members of the Proposed Collective, and does not provide adequate grounds for the Court to grant conditional certification.  *See, e.g., Guillen I*, 750 F. Supp. 2d at 478 (rejecting the argument "that where there is a corporate management structure that applies to all regions of the country – as is likely true for many, if not most, companies that operate nationally – any single employee may plausibly assert that employees throughout the country are similarly situated with respect to that employee's day-to-day job activities."); *Guillen II*, 841 F. Supp. 2d at 801.

15

D.   Conditional Certification Should be Denied Entirely, But if the Court Conditionally Certifies Any Collective, The Collective Should Be Limited to the Locations at Which Plaintiff Worked

Plaintiff's motion should be denied in its entirety, because he has failed to demonstrate that he is similarly situated to any other members of the Proposed Collective.  However, if the Court authorizes plaintiff to send any notice of his action to any potential opt-in plaintiffs, that notice should be limited to, at most, only individuals who were employed as AMs or SAMs at the same three CEC locations as plaintiff during the relevant time period.[9]

"As Plaintiff proposes a nationwide class, he bears the burden of showing a nationwide policy or plan pursuant to which" AMs and SAMs "are assigned duties that render inappropriate [defendant's] exempt classification of the [AM and SAM] position[s]."  *Vasquez*, 2011 WL 2693712, at *4.  As discussed in detail in Section II.C.2 to II.C.4 *supra*, however, plaintiff's references to consistent branding initiatives and uniform job descriptions and training programs are irrelevant for purposes of determining whether plaintiff is similarly situated to members of the Proposed Collective *with respect to the job duties they actually performed.  See, e.g., Guillen II*, 841 F. Supp. 2d at 799-800.  Apart from referring to those irrelevant corporate practices, plaintiff presents *no* evidence from which the Court could conclude that AMs and SAMs outside of New York City even *might* be performing job duties similar to those plaintiff alleges.  *See, e.g., Guillen I*, 750 F. Supp. 2d at 477 ("[T]he fact that ASMs were responsible for performing non-exempt tasks in contravention of their written job requirements in nine stores in a particular metropolitan area, out of 820 stores nationwide, provides little basis to believe that [plaintiff] is similarly situated to ASMs throughout the country with respect to his claim regarding ASM job responsibilities.")  (internal citations omitted).

---

[9] Though plaintiff worked at four different CEC locations, he worked at one of those locations – the Bronx location - only from 2008 to 2010, long before the October 17, 2011 date when his FLSA claims, at the earliest, could have started to accrue.  See Wright Decl. at ¶¶ 1-6.

The only evidence plaintiff presents with respect to what job duties AMs and SAMs actually performed is his own testimony regarding what he and four other individuals allegedly did at a handful of stores in New York City.  Even within New York City, plaintiff's observations of other members of the Proposed Collective allegedly performing nonexempt work do not cover all CEC locations in New York City, but instead are limited to the same four New York City locations at which plaintiff himself worked, only three of which he worked at after October 2011.  *See* Wright Decl. at ¶ 26 ("I observed them because we worked together as AMs and SAMs *in the same store*.") (emphasis added).  Plaintiff has not offered evidence that a single AM or SAM outside of his own New York City stores was performing nonexempt tasks.  Thus, if the Court is inclined to conditionally certify any collective at all, it should limit such a collective to, at most, individuals who were employed as an AM or SAM at the three stores at which plaintiff worked during the FLSA period.  *See Sharma v. Burberry Ltd.*, No. 12 Civ. 6356 (LDW)(AKT), 2014 WL 4385426, at *15, 23 (E.D.N.Y. Sept. 4, 2014) (conditionally certifying collective only of employees who worked at the same stores as named plaintiffs where plaintiffs failed to proffer declarations from employees at other stores); *Trinidad v. Pret a Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558-60 (S.D.N.Y. 2013) (conditionally certifying collective only of employees who worked in the same six stores as plaintiffs); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 353 (E.D.N.Y. 2008) (conditionally certifying a collective only of employees who worked at the same store as plaintiff).

E.   Conditional Certification Should be Denied Entirely, But if the Court Conditionally Certifies Any Collective, It Should Not Authorize Plaintiff's Proposed Notice

The Court should not authorize plaintiff to send notice to the Proposed Collective, or any subset thereof, using the form plaintiff suggests, because it contains numerous deficiencies, including but not limited to those outlined below.  Should the Court conditionally certify a

17

collective action for any subset of current or former CEC employees, CEC requests that the

Court direct the parties to meet and confer in an attempt to cure said deficiencies and reach

mutual agreement as to the form and content of the notice.

First, any Proposed Collective should date back, at most, to three years from the date the

Court issues a decision granting conditional certification, not three years from the date the

Complaint was filed.  The statute of limitations on FLSA claims continues to run until a given

individual affirmatively opts in to a collective action.  *See* 29 U.S.C. § 256(b).  Here, no

individuals other than plaintiff have opted in to this case as of the date of this brief, so no

individuals other than plaintiff have timely FLSA claims dating back to October 17, 2011.

Though plaintiff's moving brief contains vague references to potential equitable tolling

issues, plaintiff has not even made a request for equitable tolling.  In fact, and based on the

current record, any request for equitable tolling would be wholly unwarranted.  Equitable tolling

is an extraordinary remedy that should be granted only in highly exceptional circumstances.  *See*

*Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) ("[E]quitable

tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in

some extraordinary way from exercising his rights.") (citations and internal quotation marks

omitted).  In this case, plaintiff has not been faced with any obstacles frustrating his ability to

move for conditional certification at the earliest date he desired.  Indeed, CEC agreed to proceed

with a Rule 26(f) conference and briefing on plaintiff's motion for conditional certification

before even filing its Answer to plaintiff's Complaint.  Under such circumstances, there is no

basis for equitable tolling, and the Court should not define the parameters of the Proposed

Collective based on legal arguments that plaintiff may potentially make in the future.

Accordingly, should the Court conditionally certify any collective, notice should be distributed,

at most, only to individuals who worked for CEC as an AM or SAM at the three stores at which Plaintiff worked, and only within the three years before the date the Court issues its decision. *See Ritz v. Mike Rory Corp.*, No. 12 Civ. 367 (JBW) (RML), 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013) ("[U]nder the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed."); *Hernandez v. Immortal Rise, Inc.*, No. 11 Civ. 4360 (RRM) (LB), 2012 WL 4369746, at *7 (E.D.N.Y. Sept. 24, 2012) (measuring three year notice period from date of court's order); *Laroque v. Domino's Pizza*, 557 F. Supp. at 348 (same).

Second, members of any conditionally certified collective should have only sixty, not ninety, days during which to decide whether they want to join the collective action. A sixty-day opt-in period is standard within this Circuit, and gives potential opt-in plaintiffs more than enough time to determine whether they want to participate in the litigation. *See, e.g., Ritz*, 2013 WL 1799974, at *3 (rejecting plaintiff's request for a ninety day opt-in period, and granting a sixty day opt-in period instead); *Diaz v. S & H Bondi's Dep't Store*, No. 10 Civ. 7676 (PGG), 2012 WL 137460, at *8 (S.D.N.Y. Jan. 18, 2012). Moreover, given that the FLSA's statute of limitations is continuing to run on the claims of potential opt-in plaintiffs, and given the concerns plaintiff's counsel has expressed about the claims of those individuals expiring, a shorter opt-in period would facilitate plaintiff's stated goal of allowing potential opt-in plaintiffs to make a timely decision about their claims. *See Knispel v. Chrysler Grp. LLC*, No. 11 Civ. 11886, 2012 WL 553722, at *8 (E.D.Mich. Feb. 21, 2012) (finding a forty-five day opt-in period was sufficient "especially considering the statute of limitations concerns raised by Plaintiff's counsel.").

Third, CEC should only be required to provide the names and last known addresses of the members of any conditionally certified collective, and not other extraneous information such as telephone numbers, email addresses, or work locations.  Distribution of notice via regular mail is standard practice for collective actions within this Circuit.  *See Karvaly v. eBay, Inc*., 245 F.R.D. 71, 91 (E.D.N.Y. 2007) ("Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members.") (citations omitted); *see also, e.g., Sharma*, 2014 WL 4385426, at *18.  Should any notices be returned as undeliverable, CEC will agree to provide the last four digits of the individual's social security number to the administrator.  Plaintiff's request for additional information about potential plaintiffs – such as their telephone numbers, email addresses, and work locations – is unnecessary for the distribution of notices, unnecessarily increases the burden on CEC, unduly infringes on the privacy interest of individuals who have not yet shown any interest in participating in this litigation, and presents the possibility of communications with, or solicitation of, putative opt-ins that goes beyond the approved content of the Court's authorized notice.

For example, courts in the Eastern District have noted that distributing collective action notices via email presents numerous potential problems:

> [E]lectronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court.  Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process.  In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.

*Sharma*, 2014 WL 4385426, at *18 (*quoting Karvaly*, 245 F.R.D. at 91).  *See also Hinterberger v. Catholic Health Sys*., No. 08 Civ. 380S, 2009 WL 3464134, at *13 (W.D.N.Y. Oct. 21, 2009).

In addition, requiring CEC to provide the work locations of potential collective members presents the possibility of disrupting operations at the store locations, does nothing to further the goal of getting notice to potential plaintiffs, and provides plaintiff's counsel with information to which they should only be entitled during discovery - and then only with respect to individuals who choose to participate in the litigation.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (denying production of work locations and telephone numbers where plaintiff "provided no rationale" for such "extensive production of information.").  Furthermore, an employee's address and telephone number are personal and private information.  As such, CEC should not be required to share this information with plaintiff where, as here, it is completely unnecessary to the collective action notice process.  *See id.; see also Hinterberger*, 2009 WL 3464134, at *11 ("The Court agrees that, in the interest of privacy, CHS need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses.");  *Karvaly*, 245 F.R.D. at 91.

Finally, plaintiff's counsel has not demonstrated any reason for sending reminder postcards to members of the Proposed Collective.  *See, e.g., Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y.  2012).  Like providing email addresses, allowing for an additional mailing would only unnecessarily pressure and harass individuals who already may have made an affirmative decision not to join the case, and could be incorrectly construed by potential opt-in plaintiffs as reflecting an opinion of the Court that they should join the case.  *See Knispel*, 2012 WL 553722, at *8 ("There shall not be any 'reminder notice' provided… because they are unnecessary and could potentially be interpreted as encouragement by the Court to join the lawsuit.").

21

The foregoing list of problems with plaintiff's Proposed Notice is non-exhaustive.[10] Should the Court authorize plaintiff to send notice to the Proposed Collective or any subset thereof, CEC reserves its right to assert additional objections to plaintiff's Proposed Notice, and requests that the Court direct the parties to meet and confer with respect to the contents of the proposed form, and set a deadline by which the parties are to submit any disagreements to the Court for resolution.

## III.    CONCLUSION

Though plaintiff's burden at this initial notice stage may be modest, it is not non-existent. *See Guillen I*, 750 F. Supp. 2d at 480.  To satisfy his burden, plaintiff must present evidence not only that he and members of the Proposed Collective held the same job titles and exempt status, but that they were similarly situated in their performance of nonexempt duties that belied their exempt status.  Plaintiff has not provided any evidence from which the Court could draw such a conclusion.  Therefore, plaintiff's motion should be denied in its entirety.

Dated: January 19, 2015
    New York, New York

---

[10] For example, plaintiff's Proposed Notice calls for opt-in plaintiffs to return their consent forms to a claims administrator (via hard copy) or directly to plaintiff's counsel (via email), rather than to the Court.  *See* Pl. Exh. Q at 3.  Numerous courts in this Circuit have held that requiring notices be returned to plaintiff's counsel may discourage opt-in plaintiffs from retaining their own counsel.  *See, e.g., Tutein v. Esteemed Patrol Inc.,* No. 12 Civ. 1847 (KAM) (RER), 2013 WL 8115441, at *4 (E.D.N.Y. June 10, 2013).  CEC also has numerous objections to the wording used in plaintiff's Proposed Notice, such as the description of the claims being asserted in the lawsuit and CEC's position with respect thereto, the ability of opt-in plaintiffs to obtain their own counsel, and the discovery obligations that may accompany joining the collective action.  Because CEC believes that conditional certification should be denied entirely, it does not detail all of its objections here, but requests the opportunity to do so should the Court allow plaintiff to send notice to any other potential opt-in plaintiffs.

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By_____*/s/ Lawrence D. Levien*_____
                  Lawrence D. Levien

Lawrence D. Levien (*admitted pro hac vice*)
Esther G. Lander (*admitted pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564
(202) 887-4000 (telephone)
(202) 887-4288 (facsimile)

Anastasia M. Kerdock
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036-6745
(212) 872-1000 (telephone)
(212) 872-1002 (facsimile)

*Attorneys for Defendant CEC Entertainment, Inc.
d/b/a Chuck E. Cheese's*